David H. Bundy
DAVID H. BUNDY, P.C.
310 K Street Suite 200
Anchorage, AK 99501
(907) 248-8431
Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In Re: ) | |
| ) | |
| HOOK LINE & SINKER, INC. ) | Case No. A-17-00415 |
| ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| _____) | |

## DEBTOR'S FIFTH AMENDED PLAN OF REORGANIZATION
## DATED APRIL 26, 2019

## ARTICLE I
## SUMMARY

      This Fifth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Hook Line & Sinker, Inc. ("HLS" or the "Debtor") from cash on hand, cash flow from operations and asset sales, and future income**.** This Plan provides for one class of secured claims two classes of priority claims, and five classes of unsecured claims.  Non-insider unsecured creditors holding allowed claims over $10,000 may, under certain conditions, receive distributions which the proponent of this Plan has valued at one hundred cents on the dollar (with interest at 6%).  This Plan also provides for the payment of administrative claims on the Effective Date (as defined below) or in accordance with specific agreements between the Debtor and the holder of the claim and for payment of non-voting priority claims in accordance with the requirements of the Bankruptcy Code. In addition, this plan provides for the assumption or rejection of specific executory contracts not previously assumed or rejected during this Chapter 11 case. Finally, this Plan includes a global settlement among the owners such that James Maurer and Billy Opinsky will be the sole owners of Debtor on the Effective Date of the Plan subject to various terms and conditions described in this Plan.

      All creditors and equity security holders should refer to Articles III through V of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Unclassified | All allowed claims entitled to priority under § 507 of the Code and priority tax claims under § 507(a)(8). |
| 2.02 | Class 1 | All allowed unsecured claims not in any other Class and all unsecured claims of $10,000 or less who elect to be included in Class 1. |
| 2.03 | Class 2 | All allowed unsecured claims of $10,000 or less, and all Class 1 claims over $10,000 the holders of which agree to reduce their claims to $10,000. |
| 2.04 | Class 3 | Allowed unsecured claims held by insiders as that term is defined in 11 U.S.C. § 101 (54). |
| 2.05 | Class 4 | The allowed unsecured claims of Carl Brady, Jr. and Collin Szymanski. |
| 2.06 | Class 5 | The allowed unsecured claim of Salamatof Native Association, Inc. |
| 2.07 | Class 6 | The allowed secured claim of the Internal Revenue Service secured by one or more federal tax liens. |
| 2.08 | Class 7 | The allowed interests of the Debtor's shareholders. |

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined

in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

    3.03    <u>Priority Tax Claims.</u>

    3.03.01    The Internal Revenue Service Priority Tax Claim will be paid in equal monthly installments beginning on the Effective Date. The payments shall be in an amount sufficient amortize the claim with interest at 6% per annum, by January 31, 2023. The claim shall include interest at 6% from the date of assessment, and any penalty for late payment shall be an allowed unsecured claim. Since the filing of this bankruptcy case the IRS has offset tax refunds claimed by the Debtor's shareholders and has applied the offset amounts to reduce the IRS claim balance. Accordingly, the payments being made to the IRS under this plan will pay off the IRS claim in full sooner than January 31, 2023. In addition, when the final payment to Class 1 general unsecured claims is made, the Debtor shall at the same time pay the entire balance of the IRS claim. If the Debtor defaults in payments to the IRS, the IRS may exercise any remedies allowed under non-bankruptcy law and IRS regulations. Those shareholders who had their tax refunds offset by the IRS, including any shareholders are subject to offset in the future, will be reimbursed by Debtor as Class 3 claimants.

    3.03.02    Alaska Department of Labor's Priority Tax Claim will be paid in equal monthly installments beginning on the Effective Date. The payments shall be in an amount sufficient to amortize the claim with interest at 8.5% per annum, by January 31, 2023. The claim shall include interest at 8.5% from the date of assessment, and any penalty for late payment shall be an allowed unsecured claim. In addition, when the final payment to Class 1 general unsecured claims is made, the Debtor shall at the same time pay the entire balance of the Alaska Department of Labor claim. If the Debtor defaults in payments to the Alaska Department of Labor, the State may exercise any remedies allowed under non-bankruptcy law and applicable regulations.

    3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

    3.05    "Gap" Claims. Unsecured claims as defined in 11 U.S.C. § 502 (f) incurred between the bankruptcy petition date, December 5, 2017 and the date of the order for relief, February 23, 2018, will be paid on the

Page 3:    Fifth Amended Plan of Reorganization Dated April 26, 2019

Effective Date of the Plan except to the extent that the holder of a specific Gap Claim agrees to a different treatment.

# ARTICLE IV
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

4.01    Class 1         General Unsecured Claims

Impaired

Class 1 unsecured claims may elect Option (a) or Option (b). Creditors who make no election will be treated under Option (b).

Creditors electing Option (a) will be treated as though they had claims in Class 2, and will receive a single lump sum payment of 75% of the allowed claim, or $7,500, whichever is less, which shall be paid on the Effective Date of the Plan.

All creditors were given the opportunity to elect between Class 1 and Class 2 in connection with the balloting on the Debtor's Fourth Amended Plan. All elections made at that time will be used to calculate distributions under this Fifth Amended Plan and no further opportunity to elect between classes will be given.

Creditors electing Option (b) will receive semi-annual payments. On the Effective Date of the Plan the Debtor shall pay to each creditor such creditor's pro-rata share of $200,000. Continuing on June 30, 2019 and December 31, 2019 and on June 30 and December 31 of each succeeding calendar year through December 31, 2023, the Debtor shall pay to each creditor such creditor's pro-rata share of $100,000. All claims will be paid in full not later than December 31, 2023.

In addition to the payments of $100,000 each, on December 31, 2019 and on each succeeding December 31, the Debtor shall make an additional distribution to the holders of Allowed Claims in Class 1. This distribution shall be the difference (if positive) between the Debtor's cash on hand and accounts receivable and the total of (a) $150,000, (b) the required $100,000 distribution, (c) the estimated amount needed to distribute to shareholders to pay their income tax liabilities attributed to the Debtor's income for the current year, and (d) ordinary course accounts payable then owed by the Debtor. The

Page 4:         Fifth Amended Plan of Reorganization Dated April 26, 2019

details of this annual calculation shall be provided to any unpaid creditor who shall have the right to request backup detail to verify that the calculation is fairly made consistent with this paragraph.

Payments shall be made until all Class 1 claimholders have received cash equal to 100% of their allowed claims, including interest at 6% per annum accruing from the Effective Date of the Plan.

Each creditor's prorata share of any distribution shall be determined by multiplying such distribution by a fraction, the numerator of which is the creditor's allowed claim, and the denominator of which is the total of all allowed claims in Class 1. If any claims are subject to dispute at the time of a distribution, the amount due to such claim, if allowed, will not be distributed but will be transferred to a separate account for such creditor and retained by the Debtor until such claim is finally allowed or disallowed at which time the amount due shall be recalculated and distributed, and any amount allocated to the disallowed portion of the claim shall be included in the next semi-annual distribution to the holders of allowed claims in this class.

Some of the claims in Class 1 are held by beverage suppliers who require a deposit (usually $50) for each keg delivered to the Debtor. When the empty keg is returned, the deposit is refunded. However certain suppliers providing beverages after the order for relief have not refunded the deposits; instead they have been holding them in a suspense account or crediting them to the pre-order for relief balances owed to the supplier. The suppliers' claims shall be allowed in the amounts owed on the date of the order for relief and the Debtor shall deduct the amounts of such retained deposits from the distributions made to the affected creditors until the deposits are recaptured. Any deposits retained after the effective date of the plan shall be credited to subsequent distributions.

In addition to Class 1 claims previously allowed for voting purposes, the following Class 1 claims shall be allowed:

| | |
|---|---|
| Melissa Mitchell | $25,000 |
| J.R. Wilcox | $109,508.63 |
| Nick Jurasek | $25,800 |
| Patrick Flynn | $76,320.28. |

Class 2 – Small Unsecured Claims

Impaired

Class 2 unsecured claims may elect Option (c) or Option (d). Creditors in Class 2 who make no election will be treated under Option (c). Creditors electing Option (c) will receive a single lump

Page 5:          Fifth Amended Plan of Reorganization Dated April 26, 2019

sum payment of 75% of the allowed claim, or $7,500, whichever is less, which shall be paid within 30 days of the Effective Date of the Plan. Class 2 claim holders treated under Option (c) will not receive any further distributions on account of their claims.

All creditors were given the opportunity to elect between Class 1 and Class 2 in connection with the balloting on the Debtor's Fourth Amended Plan. All elections made at that time will be used to calculate distributions under this Fifth Amended Plan and no further opportunity to elect between classes will be given.

If any of the Class 2 claims treated under Option (c) are held by beverage suppliers who have been paid more than 75% by retaining deposits after the order for relief, they shall not receive any further payments or apply any further deposits to the balance of their claims, and the Debtor reserves the right to recover any over-payment.

Class 2 claim holders electing Option (d) will be treated as Class 1 claim holders who have elected Option (b), above.

Class 3 – Insider Claims

Impaired

The following Class 3 Claims will be allowed:

| Creditor | Amount |
|---|---|
| Big Island Alehouse (loans to Debtor) | $645,711 |
| Kohola, LLC (loans to Debtor) | $50,000 |
| Dylan Buchholdt (loan to Debtor) | $45,000 |
| Dylan Buchholdt (fee reimbursement) | $20,000 |
| Dylan Buchholdt (tax refund applied to Debtor 941 taxes) | $53,500 |
| Robert Jurasek (fee reimbursement) | $225,000 |
| Robert Jurasek (tax refund applied to Debtor 941 taxes) | $37,075 |
| James Maurer (tax refund applied to Debtor 941 taxes) | $18,653 |
| Billy Opinsky (tax refund applied to Debtor 941 taxes) | $35,000 |

The claims held by Big Island Alehouse, LLC and Kohola, LLC have been assigned to Carl Brady, Jr. and Collin Szymanski; these claims will be treated as insider claims. Once the debts owed to Carl Brady, Jr. and

Collin Szymanski under the settlement agreement in Alaska Superior Court Case No. 3AN-17-10414CI are paid in full all further payments on the insider claims of Big Island Alehouse, LLC and Kohola, LLC shall be made directly to those creditors.

The insider claim held by Gorbuscha, LLC has been released with respect to this plan.

Class 3 Insider Claims will receive payments as follows: commencing on the June 30 or December 31 next following the completion of payments to Class 1 and continuing on June 30 and December 31 of each succeeding calendar year, the Debtor shall pay to each creditor such creditor's pro-rata share of $100,000, until all insider claims are paid in full, without interest. The distributions shall be calculated in the same manner as for Class 1. In addition to the payments of $100,000 each, on December 31 next following the completion of payments to Class 1 and on each succeeding December 31, the Debtor shall make an additional distribution to the holders of Allowed Claims in Class 3. This distribution shall be the difference (if positive) between the Debtor's cash on hand and accounts receivable and the total of (a) $150,000, (b) the required $100,000 distribution, (c) the estimated amount needed to distribute to shareholders to pay their income tax liabilities attributed to the Debtor's income for the current year, and (d) all ordinary course accounts payable then owed by the Debtor. The details of this annual calculation shall be provided to each Class 3 claimholder, and any such claimholder who shall have the right to request backup detail to verify that the calculation is fairly made consistent with this paragraph. The Debtor shall pay all Class 3 claims in full not later than December 31, 2023.

Until full payment of the Class 3 claims, the Debtor shall (i) not issue additional shares (ii) not pay salaries to any shareholders, officers or directors other than James Maurer or his successor as manager as provided in the Plan (capped at $80,000 per year for 2018 and no more than a 10% raise for each year thereafter), (iii) not make any distributions to shareholders other than to pay income taxes attributed to the Debtor's income as provided in this Plan.

Class 4 – Claims of Carl Brady, Jr. and Collin Szymanski

Impaired

The claims filed by Carl Brady, Jr. and Collin Szymanski shall be treated as follows:

Carl Brady Jr. and Collin Szymanski shall have allowed unsecured claims in Class 1 of $55,000 each. The balance of their claims

Page 7: Fifth Amended Plan of Reorganization Dated April 26, 2019

($345,000 each) shall be treated as subordinated Class 3 claims and paid prorata with the subordinated claims of Big Island Alehouse, LLC, Kohola, LLC, Dylan Buchholdt, Robert Jurasek, James Maurer, Billy Opinsky and Salamatof Native Association. Brady and Szymanski are also receiving payments under a settlement agreement in Alaska Superior Court Case No. 3AN-17-10414CI. Once all amounts owed under that settlement agreement are paid in full from whatever source, including interest at 6% per annum, no further payments shall be made by the Debtor on Brady and Szymanski's subordinated unsecured claims.

The adversary proceeding against Brady and Szymanski shall be dismissed following the effective date of the Plan.

As more fully described in Section 5, Maurer, Opinsky, and Debtor shall indemnify Buchholdt,Jurasek and FOCB for all payments on debts required by the Plan, including each Class 3, 4 and 5 claims.

Class 5 – Claim of Salamatof Native Association, Inc.

Impaired

The claim filed by Salamatof Native Association, Inc. shall be treated as follows:

Salamatof shall have an allowed unsecured claim of $1,986,000 of which $110,000 will be treated as a Class 1 claim and the balance of $1,876,000 shall be treated as Class 5 claim. Interest shall accrue on this claim at 10% per annum.

Maurer, Opinsky or the Debtor shall pay Salamatof $300,000 on the later of the effective date of the Plan or June 30, 2019. Thereafter, interest shall accrue until full payment of Class 1 claims, after which payments allocated to Salamatof out of Class 3 distributions will be applied to accrued interest and then to principal of the Salamatof claim.

The Debtor will pay the $1,576,000 remaining balance of the claim (plus any accrued interest) as a subordinated unsecured claim in Class 3.

The entire balance due Salamatof will be due and payable not later than December 31, 2021.

Any prepayments will be applied to the next succeeding installments due. If a payment is not made on the due date as set forth in the Plan, Salamatof may send a notice of an alleged default to the Debtor, Maurer and Opinsky

and their counsel by email, and Debtor shall have five (5) calendar days thereafter to cure the alleged default. In the event of an uncured default, Salamatof shall also have the right to replace Debtor's management with personnel of its choosing. To accomplish this the Debtor shall have a joint shareholder and Board of Directors' meeting immediately after the effective date and prepare an irrevocable resolution authorizing Salamatof to replace the Debtor's management in the event of an uncured default.

Until full payment of the Salamatof claim the Debtor, Maurer and Opinsky shall (i) not issue additional shares., (ii) make no contracts or agreements for the issuance of any shares, (iii) make no agreements regarding the shareholders' rights to dispose of any shares, except for any transfer that is made expressly subject to this 5th amended plan and the pledge agreement (iv) not pay salaries to any shareholders, officers or directors other than James Maurer or his successor as manager as provided in the Plan, (v) not make any distributions to shareholders except to pay income taxes attributable to the Debtor's income.

Any transferee of the shares shall agree to be bound in writing by the debtor's fifth amended plan and the pledge agreement. Any transferred shares shall be placed in the same escrow as Maurer and Opinsky's shares endorsed in blank, subject only to Salamatof's interest. All such transferred shares shall be subject to the same terms as set forth in the pledge agreement and fifth amended plan and shall secure the obligation owed Salamatof. Any sums obtained by Maurer and Opinsky for the transferred shares shall be paid to Salamatof,

The adversary proceeding filed by the Debtor against Salamatof will be dismissed following the Effective Date of the Plan.

On the Effective Date Salamatof shall release Robert Jurasek and Dylan Buchholdt from all liability for the four promissory notes totaling $1.9 million that comprise Salamatof's claim against the Debtor.

On the Effective Date the debtor shall restate the four notes into one promissory note and James Maurer and Billy Opinsky shall personally guarantee payment of Salamatof's $1.9 million claim. As additional security for payment of amounts to be paid by the Debtor on the Salamatof claim, James Maurer and Billy Opinsky will pledge their 100% share ownership in the Debtor to Salamatof. Stock certificates representing the shares and executed stock powers shall be held in escrow with an agreed escrow agent to facilitate share transfers in the event of an uncured default. The Debtor, Maurer and Opinsky shall waive any requirements in the Debtor's bylaws and or any shareholder's agreement (if any) that prevent and/or condition the sale of the shares of stock held by Opinsky and Maurer to Salamatof or any other entity. The transfer upon default

Page 9:          Fifth Amended Plan of Reorganization Dated April 26, 2019

will be absolute and all interests will be transferred. Upon default the shares shall be delivered to Salamatof or Salamatof's agent when a writing signed solely by Salamatof is delivered to the escrow agent.  To the extent possible under AS §45.29.601 et. seq. Maurer, Opinsky and the Debtor will waive all requirements of notice of default, notice of sale, transfer to Salamatof or its designee in satisfaction of the debt and any sale. Salamatof may assign its rights in the escrow and shares to any affiliate owned at least 51% by  Salamatof.

Salamatof shall forebear from any enforcement of its rights under the personal guarantees and stock pledges as long as Debtor, Maurer and Opinsky make all payments to Salamatof as required by this Plan.

Class 6 – IRS Secured Claim

Not impaired

The allowed claim of the Internal Revenue Service secured by one or more federal tax liens shall be paid as part of the IRS priority claim described above.

Class 7 – Equity Owners

Jurasek's and Buchhold's shares shall be transferred to Maurer and Opinsky, who shall each own 50% of the Debtor's outstanding shares; alternatively, Jurasek's and Buchhold's shares shall be transferred to the Debtor and become treasury stock such that Maurer and Opinsky shall each own 50% of the outstanding shares of the Debtor.

## ARTICLE V
## PROVISIONS REGARDING AFFILIATE ENTITIES AND OWNERS

By consenting to confirmation of this Plan, each of James Maurer, Billy Opinsky, Dylan Buchholdt and Robert Jurasek (collectively "Owners" and each individually an "Owner") agrees to the following provisions on his own behalf and on behalf of Fish or Cut Bait, LLC, Gorbuscha, LLC, Big Island Alehouse, LLC and Kohola, LLC.

5.01    Provisions regarding Gorbuscha, LLC:
Each Owner shall retain his respective interests in Gorbuscha, LLC, except that the interests shall be freely transferable and this right to transfer ownership interests shall be recognized and authorized in the Operating Agreement, if one exists.  Otherwise, this Plan serves as the requisite authorization for such transfers.

Page 10:              Fifth Amended Plan of Reorganization Dated April 26, 2019

      Gorbuscha shall (i) not issue additional membership interests, (ii) not pay any salaries or management fees to owners, (iii) use all its revenue for ordinary course debt repayment to James Pentlarge (Salamatof is being paid through the Plan and its deed of trust will be released once Plan payments to Salamatof have been made in full), taxes, maintenance and improvements to the real property owned by Gorbuscha (not required of the tenant), and (IV) make bi-annual distributions (June and December) of excess cash above payments required under subsection (iii) above (Gorbuscha shall retain no more than $20,000 in cash for contingencies) to owners pro-rata consistent with past practice. Gorbuscha shall also limit any Fish or Cut Bait, LLC bad debt write-off to an amount limited by the Net Operating Losses held by Fish or Cut Bait (i.e., there shall be no instances where Gorbuscha's debt write-off causes taxable debt forgiveness to FOCB). The accountants for Gorbuscha and FOCB shall communicate to make sure this provision is respected. Other than the ability to write-off the debt, Gorbuscha agrees not to pursue FOCB for collection of the inter-company debt (i.e. It is not released, but collection will not be pursued). If there is any debt write-off that is later reversed, Gorbuscha shall make a distribution to the four owners as necessary to allow the four owners to pay their federal income taxes related to Gorbuscha income.

      Salamatof's deed of trust on the Gorbuscha property shall remain in effect and shall be ratified by this Plan. It shall have priority over the Debtor's lease from Gorbuscha, but the Debtor shall attorn to the owner of the property if the lease remains in effect.

5.02    Provisions regarding FOCB:

      Maurer and Opinsky shall transfer their interests in FOCB to Buchholdt and Jurasek on the Effective Datemaking the ownership of FOCB: Buchholdt 50% and Jurasek 50%.

      On the Effective Date Salamatof shall release FOCB from any and all all liability for the four promissory notes totaling $1.9 million that comprise Salamatof's claim against the Debtor, including past and future interest, penalties and fees.

      The loan and accounts payable by FOCB to the Debtor (approximately $1.4 million and any past due interest) and shall be written off as bad debt by the Debtor on the Debtor's books and for federal income tax purposes in an amount for 2018 such that the owners of Debtor in 2018 (all 4 Owners) do not have any income tax liability for the profits generated by Debtor in 2018; the amount to be written off as bad debt for 2019 (for the

short tax year up to the change of ownership per this Plan and the remainder of the year) shall eliminate income for the respective Owners for the respective periods; however, the amount written off by Debtor as bad debt in any one year shall be limited so as not to create an income tax liability for FOCB due to forgiveness of debt income (i.e., limited to the NOL available to FOCB, as discussed above in the Gorbuscha section). FOCB, Buchholdt and Jurasek shall cooperate with the Debtor, and their respective accountants shall communicate and cooperate, in order to facilitate the ability of the Debtor to write off the loan due from FOCB as a business bad debt. If there is any debt write-off that is later reversed, and the tax liability relates to the period prior to the Effective Date of the Plan, Debtor shall make a distribution to the 4 Owners as necessary to allow the 4 Owners to pay their federal income taxes related to Debtor income.

    5.03    Provisions regarding Big Island Alehouse, LLC and Kohola, LLC:

On the Effective Date, Robert Jurasek and Dylan Buchholdt shall transfer to James Maurer and Billy Opinsky all of Jurasek's and Buchholdt's ownership interests in Big Island Alehouse, LLC and in Kohola, LLC (subject to any pledge agreements encumbering the interests, including the pledges to Mantech by Buchholdt and Jurasek, to Brady/Szmanski by all 4 owners, and to James Pentlarge for $150,000 pledge by Buchholdt).

To the extent applicable, BIA/Kohola shall also limit any Fish or Cut Bait, LLC bad debt write-off to an amount limited by the Net Operating Losses held by Fish or Cut Bait (i.e., there shall be no instances where BIA/Kohola's debt write-off causes taxable debt forgiveness to FOCB). The accountants for BIA/Kohola and FOCB shall communicate to make sure this provision is respected. Other than the ability to write-off the debt, BIA/Kohola agrees not to pursue FOCB for collection of the inter-company debt (i.e. It is not released, but collection will not be pursued). If there is any debt write-off that is later reversed, and the tax liability relates to the period prior to confirmation of the Plan, BIA/Kohola shall make a distribution to the 4 owners as necessary to allow the 4 owners to pay their federal income taxes related to BIA/Kohola income.

BIA and Kohola will file short year tax returns as of the Effective Date to segregate the 2019 tax year between the period when BIA and Kohola were owned by four owners, and the period when they will be owned by two owners.

    5.04    Provisions regarding the Guarantors/Owners.

Each of the Owners, the Debtor, Big Island Alehouse, Kohola, Gorbuscha, and FOCB (the "Releasing Parties") hereby release each of the other from any claim, right, cause of action, or demand, whether known or unknown, that exists at any time prior to the Effective Date of this Plan including releasing each of the other Releasing Parties from rights of contribution or amounts owed, except for the duties and obligations described in this Plan or any document executed pursuant to this Plan.  This global release agreement shall include any contribution rights of Maurer, Opinsky and Debtor against Buchholdt, Jurasek, or FOCB for all payments included in the Plan.  In addition to other obligations contained in this Plan, contribution rights, if any, shall remain in effect by and among Maurer, Opinsky, Buchholdt and Jurasek for any personal obligations for IRS debt of FOCB that arose prior to Plan confirmation (but not after).

Except as otherwise provided in this Plan:

Jurasek and Buchholdt shall indemnify Maurer, Opinsky, the Debtor, Gorbuscha, Big Island Alehouse and Kohola from any obligation incurred by FOCB <u>after</u> the Effective Date.

Maurer, Opinsky, the Debtor, BIA and Kohola shall indemnify Buchholdt, Jurasek and FOCB from any obligation incurred by the Debtor, Big Island Alehouse or Kohola <u>after</u> the Effective Date.

Each of the Releasing Parties agree to not disparage one another for any of their business relationships or business dealings occurring prior to the Effective Date of the Plan.

Maurer, Opinsky, the Debtor, BIA and Kohola shall waive any rights to contribution from Buchholdt, Jurasek and FOCB with regard to any claims against Maurer and Opinsky, the Debtor, BIA and Kohola.

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01     <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.02    <u>Objections to Claims</u>.  The Debtor retains the right to object to proofs of claim following the Effective Date of the Plan. All objections shall be filed not later than 90 days after

the Effective Date and any claim as to which no objection is filed shall be allowed in the amount claimed.

6.03    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.04    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    Assumed Executory Contracts and Unexpired Leases.

The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article IX or sooner as provided in separate orders of the Bankruptcy Court. Except as modified, the terms of the original contracts or leases shall remain in effect. Except as set out in this paragraph, no cure payments, compensation for prior defaults, or adequate assurance of future performance shall be required with respect to any assumed contracts or leases.

7.01.01    Real property lease from Pioneers of Alaska, Igloo 15.

7.01.02    Franchise agreement with HMS Host International, LLC under which the counter-party operates a restaurant and bar at the Anchorage Airport.

7.02    Rejected Executory Contracts and Unexpired Leases.

The Debtor rejects all executory contracts and/or unexpired leases not identified above as assumed, effective upon the effective date of this Plan as provided in Article IX, or sooner as provided in separate orders of the Bankruptcy Court.

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01 above, or before the date of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

      7.03    The Debtor shall enter into a new lease with Gorbuscha, LLC in the form attached to the disclosure statement that accompanies this plan. The lease shall be effective on the Effective Date.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN AND MANAGEMENT OF THE DEBTOR

      The Debtor will continue in the business of operating Humpy's Great Alaskan Alehouse, Flattop Pizza and Bootlegger's Bar at 610 West Sixth Avenue and 629 F Street, Anchorage.

      The Debtor shall be managed by its management-level employees as described in the disclosure statement. The compensation of the Debtor's director of operations shall remain as stated in Docket #65 until all payments owed to creditors in Classes 1 and 2 are paid in full, except that compensation may be increased by not more than 10% annually starting January 1, 2020. The Debtor shall also distribute to its shareholders funds sufficient to shall distribute earnings on each share of common stock for that taxable year in an amount at least sufficient to enable the shareholders to pay all federal income taxes that they may owe on account of the Debtor's taxable income that is passed through to and taxed to them. The distributions required to be paid under the provisions of the above sentence shall be paid in time to allow shareholders to make estimated payments of federal income taxes when due, as well as on or before the fifteenth day of April following the calendar year that includes the last day of the Debtor's taxable year for which taxable income as an S Corporation was passed through to the shareholders. If the Debtor obtains an extension of time to file its tax or information returns, then the Debtor shall pay to the shareholders by the fifteenth day of April a reasonable estimate of the amount required to paid under this section, with the balance, if any, to be paid when the Debtor files its tax or information return. Credits against tax passed through to the shareholders that can be used, in all circumstances, to reduce income taxes that would otherwise be owed by any shareholder shall reduce the amount required to be distributed. The Debtor will file a short year tax return as of the Effective Date to segregate the 2019 tax year between the period when the Debtor was owned by four owners, and the period when it will be owned by two owners.

      Until full payment of amounts due to creditors under the Plan, the Debtor shall not make loans or other inter-company transfers to shareholders or affiliate entities, other than rent payments to Gorbuscha, LLC and purchases of goods or services at fair market value in the ordinary course of business.

## ARTICLE IX
## PLAN-SPECIFIC DEFINITIONS

Page 15:              Fifth Amended Plan of Reorganization Dated April 26, 2019

| | | |
|---|---|---|
| 9.01 | Debtor. | Hook Line & Sinker, Inc. an Alaska corporation. |
| 9.02 | Insider Claims | Insider Claims are claims which on the date of the Order for Relief were held by Insiders as that term is defined in 11 U.S.C. § 101 (31) |

## ARTICLE X
## GENERAL PROVISIONS

Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

10.01 Effective Date of Plan. The effective date of this Plan is the first business day fifteen days after the entry of the Bankruptcy Court order confirming this Plan.

10.02 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.03 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

10.04 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

10.05 Corporate Governance. The Debtor shall not be permitted to issue non-voting equity securities.

10.06 Retention of Jurisdiction. Until the claims are paid in full, the Bankruptcy Court shall retain jurisdiction to the fullest extent authorized by the Bankruptcy Code and United States Code to ensure that the purpose and intent of the Plan are effectuated. Jurisdiction shall be exclusive to the extent provided by 28 U.S.C. § 1334(a). The Court's jurisdiction shall include, but not be limited to:

1. classification and allowance of Claims and Interests;

2. resolution of counterclaims against persons filing Claims against the estate;

3. allowance of all Claims for damages as a result of rejection of any executory contracts or leases;

4. approval of the sale of assets, if necessary;

5. allowance of applications for payment of Administrative Expenses, as well as any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or Rules or the Plan;

6. resolution of all causes of action, controversies, questions, and disputes regarding title to estate assets;

7. implementation of the provisions of the Plan, including, without limitation, entry of injunctions and other orders in aid of its confirmation and consummation;

8. resolution of all matters and controversies regarding state, local, and federal taxes pursuant to applicable provisions of the Bankruptcy Code;

9. resolution of any and all applications, adversary proceedings, and contested or litigated matters pending before the Court;

10. resolution of any causes of action brought by the Reorganized Debtor to recover assets, including collection actions, breach of contract actions, and avoidance actions allowed by the Bankruptcy Code;

11. correction of any defect, curing of any omission, or reconciliation of any inconsistency in the Plan, Confirmation Order, and any documents executed or to be executed in connection with them;

12. approval of any modification to the Plan;

13. shortening or extending, for cause, any time fixed for doing any act or thing under the Plan;

14. entry of a final decree closing the bankruptcy case; and

15. resolution of other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or Confirmation Order.

10.07   As provided by § 1141 (c) of the Bankruptcy Code, following confirmation of this Plan, all real and personal property owned by the Debtor shall be free and clear of all liens and encumbrances other than (i) tax liens held by the Municipality of Anchorage (ii) the federal tax liens held by the Internal Revenue Service.

10.08 Post-Confirmation Reports

Within 120 days of the Effective Date, until Substantial Consummation, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made toward Substantial Consummation of the confirmed Plan. The status report shall

be served on the U.S. Trustee and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities until such time as the Plan has been Substantially Consummated, at which time no further reports will be due. Additionally, the Reorganized Debtor will file financial reports with the U.S.
Trustee for each calendar quarter, or portion thereof, until the case is closed and a final decree is entered. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter.

# ARTICLE XI
# DISCHARGE

11.01.  Discharge.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

Dated:  April 26, 2019

HOOK LINE & SINKER, INC

By: _____/s/James Maurer_____

David H. Bundy, PC
Attorney for Debtor

By:_____/s/  David H. Bundy_____
      David H. Bundy